Courtney SMITH, Appellant,

v.

CINCINNATI INSURANCE
COMPANY, Appellee.

No. 41A01–0109–CV–353.

Court of Appeals of Indiana.

May 31, 2002.

Michael G. Getty, Rori L. Goldman, Hill
Fulwider McDowell Funk & Matthews, In-
dianapolis, IN, Attorneys for Appellant.

601

Donald J. Tribbett, Scott L. Starr, Starr Austen Tribbett Myers & Miller, Logansport, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Natalie Deem filed a complaint for damages against Courtney Smith, who was driving Deem's car in which Deem was a passenger when both parties were involved in a single-car accident. Smith, in turn, filed a declaratory judgment action against Deem's insurer, Cincinnati Insurance Company ("Cincinnati Insurance"), seeking a determination whether Smith was covered under Deem's insurance policy. After a bench trial, the court concluded that Smith was not entitled to liability coverage under the policy. Smith appeals from that judgment.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On December 22, 1997, Deem, then age eighteen, and Smith, then age fifteen, visited mutual friends' houses together during the evening. Deem was driving her car, and Smith, who had only a learner's permit, was riding in Deem's car as a passenger. They eventually arrived at Chad Collins' house, where they spent the remainder of the evening and early morning hours of December 23, 1997. Deem became "extremely intoxicated," and she vomited and passed out at Collins' house. When Deem woke up a short time later,

she told Smith that she wanted to go home. Deem insisted that her car not be left at Collins' house, so Smith agreed to drive Deem home in Deem's car.[1] The roads were covered with snow and ice, and Smith lost control of Deem's car and drove it off of the road. Both Deem and Smith sustained injuries as a result of the accident.

Deem filed a complaint for damages against Smith, and Smith, in turn, moved for a declaratory judgment to determine whether Smith was covered under Deem's policy with Cincinnati Insurance. The trial court bifurcated the proceedings, and, after a bench trial on Smith's motion for declaratory judgment, the court found that Smith was not covered under Deem's insurance policy. Smith appeals from that judgment.

### DISCUSSION AND DECISION

The trial court's declaratory judgment order was accompanied by findings of fact and conclusions of law which the trial court made sua sponte.[2] Thus, in reviewing the judgment, we first determine whether the evidence supports the findings, and then whether the findings support the judgment. *Indiana Farmers Mut. Ins. Co. v. Ellison*, 679 N.E.2d 1378, 1380 (Ind.Ct.App.1997), *trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* at 1381. The judgment will be reversed only when clearly erroneous, that is, when the judgment is unsupported by the findings of fact. *Id.* We

---

1. There is conflicting evidence regarding whether Deem gave Smith permission to drive her car. The trial court found that "Smith agreed to drive Deem's car" and that "Smith stated she had Deem's permission to drive Deem's car," but Deem does not recall giving Smith permission to drive her car.

2. While Cincinnati Insurance orally moved that the trial court enter findings and conclusions, unless such a motion is in writing, we treat the findings and conclusions as though they were entered sua sponte. *See Faver v. Bayh*, 689 N.E.2d 727, 730 (Ind.Ct.App.1997).

consider only the evidence most favorable to the judgment and all reasonable inferences flowing therefrom. *Id.* We will not reweigh the evidence or assess the credibility of witnesses. *Id.*

■ The same standard applies when the trial court enters findings sua sponte, with one notable exception. *Id.* The specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *Id.* We may affirm a general judgment on any theory supported by the evidence introduced at trial. *Id.*

■ Construction of the terms of a written contract is a pure question of law for the court, and we conduct a de novo review of the trial court's conclusions in that regard. *Grandview· Lot Owners Ass'n, Inc. v. Harmon,* 754 N.E.2d 554, 557 (Ind.Ct.App.2001). When interpreting an insurance policy we give plain and ordinary meaning to language that is clear and unambiguous. *Westfield Companies v. Rovan, Inc.,* 722 N.E.2d 851, 855 (Ind.Ct.App. 2000). Policy language is unambiguous if reasonable persons could not honestly differ as to its meaning. *Id.* at 856. To this end, we look to see if policy language is susceptible to more than one interpretation. *Id.*

■ The policy provision at issue here excludes coverage for any person "using a vehicle without a reasonable belief that that person is entitled to do so." Smith contends that she had a "reasonable belief" that she was "entitled" to drive Deem's car because she alleges that she had Deem's permission to drive the car. Still, Smith had only a learner's permit and was only legally allowed to drive when accompanied by a parent, guardian, or relative. Because no Indiana court has defined the terms "reasonable belief" and "entitled" in the context of the provision at issue here, we

find the determinations of other jurisdictions helpful in our analysis.

The Michigan Court of Appeals concluded that an exclusion identical to the exclusion at issue here was not ambiguous. *See Huggins v. Bohman,* 228 Mich.App. 84, 578 N.W.2d 326 (1998), *appeal denied.* That court noted:

Under its plain terms, a nonowner driver must be "entitled" to drive the automobile. "Entitle," as defined in Webster's Ninth New Collegiate Dictionary (1991) means "to furnish with proper grounds for seeking or claiming something." Plaintiff contends that to "have permission" and to "be entitled" are the same. We disagree. "Permission" is defined in Webster's Ninth New Collegiate Dictionary (1991) as "formal consent." Although consent is a proper ground, it is not the only ground. It necessarily follows that mere permission to drive the automobile was inadequate.

*Id.* at 328–29. And the Missouri Court of Appeals, also finding the provision unambiguous, stated, "[i]t is relatively straightforward: [the plaintiff] not only had to believe that she had a right to drive the car, but her belief had to be rational." *Omaha Prop. and Casualty Ins. Co. v. Peterson,* 865 S.W.2d 789, 790 (Mo.Ct.App. 1993), *trans. denied.*

In contrast, the Georgia Supreme Court found this exclusion ambiguous. *See Hurst v. Grange Mutual Casualty Co.,* 266 Ga. 712, 470 S.E.2d 659 (1996). That court stated:

Since the insurance contract does not contain a definition of the word "entitled," we conclude that the exclusion at issue is susceptible [to] three logical and reasonable interpretations: that the user must be authorized by law to drive in order to reasonably believe he is entitled to use a vehicle; that the user must have the consent of the owner or appar-

ent owner in order to reasonably believe he is entitled to use the vehicle; or, that the user must have both consent and legal authorization in order to be entitled to use the vehicle. The number of reasonable and logical interpretations makes the clause ambiguous [ ], and the statutory rules of construction require that we construe the ambiguous clause against the insurer. Accordingly, we adopt the interpretation least favorable to the insurer and determine that the clause excludes from coverage only those non-owner drivers who use a vehicle without a reasonable belief that they had the permission of the owner or apparent owner to do so.

*Id.* at 716–17, 470 S.E.2d 659 (citations omitted).

■■■ Here, the trial court concluded that the challenged provision was ambiguous,[3] and the court applied the two-part test set out in *Peterson,* namely, whether Smith had a subjective belief that she was entitled to use the car and whether that belief was reasonable. *Peterson,* 865 S.W.2d at 791. Smith maintains that the trial court erred when it applied this test after finding the provision ambiguous since the *Peterson* court found the same provision unambiguous. Specifically, Smith contends that the trial court was required, but failed, to strictly construe the provision against the insurer. We need not address that argument, however, because we disagree with the trial court's conclusion that the provision is ambiguous.

■■ Instead, we choose to follow our sister courts in Michigan and Missouri and conclude that the challenged exclusion is unambiguous. We are persuaded by the Michigan Court of Appeals' analysis of the definitional distinction between being "entitled" to drive and having "permission" to drive, as set out above. We also think that a "reasonable belief" requires, by definition, an objective standard.[4] Accordingly, we conclude that the trial court properly applied the second prong of the *Peterson* test, namely, whether Smith had a reasonable belief that she was entitled to drive Deem's car. And, like the trial court, we adopt the criteria set out by the Missouri Court of Appeals to determine whether a driver has a reasonable belief that she is entitled to drive another person's car: 1) whether the driver had express permission to use the vehicle; 2) whether the driver's use of the vehicle exceeded the permission granted; 3) whether the driver was legally entitled to drive under the laws of the applicable state; 4) whether the driver had any ownership or possessory right to the vehicle; and 5) whether there was some form of relationship between the driver and the insured, or one authorized to act on behalf of the insured, that would have caused the driver to believe that he was entitled to drive the vehicle. *See Peterson,* 865 S.W.2d at 791.

The trial court applied these criteria to the facts of this case and made the following findings of fact:

---

**3.** We note that the fact that Smith and Cincinnati Insurance espouse differing interpretations of the policy provision at issue here does not mean it is ambiguous. *See Lake States Ins. Co. v. Tech Tools, Inc.,* 743 N.E.2d 314, 319 (Ind.Ct.App.2001). In addition, failure to define a term in an insurance policy does not necessarily make it ambiguous. *Farmers Ins. Exchange v. Smith,* 757 N.E.2d 145, 149 (Ind. Ct.App.2001), *trans. denied.*

**4.** While Black's Law Dictionary does not define "reasonable belief," we think that this term is not unlike the "reasonable person" standard which is, of course, an objective standard of conduct. *See* BLACK'S LAW DICTIONARY 1273 (7th ed. 1999) ("The reasonable person acts sensibly[.]")

[ ] Smith stated she had Deem's permission to drive Deem's car. . . .

[But] Deem has no recollection of having given permission to Smith to drive the car. . . .

[ ] Smith knew Deem was extremely intoxicated when Deem purportedly gave this permission. Deem had been vomiting and passed out from extreme intoxication shortly before Deem purportedly gave Smith permission to drive, [and] a reasonable person who had these facts would not have believed Deem was in a condition to give permission.

[ ] Smith believed that she could drive with anyone at least 18 years old. However, Smith recently (within six months) had taken driver's education, where it was taught and emphasized that she could only drive with a passenger at least 18 years old, who was also a parent, guardian, or relative. A reasonable person exercising the standard of care required of an adult, who had recently taken the driver's education course would know that her passenger had to be at least age 18 who was also a parent, guardian or relative, and not intoxicated.

[ ] Under Indiana law, Smith, who was fifteen years old and held only a learner's permit on the date in question, was prohibited from operating a vehicle unless accompanied by a person at least eighteen years of age, who also was a parent, guardian or relative. I.C. 9–24–7–4.

[ ] Smith could not reasonably have believed she had Deem's express permission to drive the Deem vehicle, given Smith's knowledge of Deem's extreme intoxication at the time Deem allegedly gave this permission.

[ ] Smith was not legally entitled to drive Deem's car, under Indiana law for holders of learner's permits.

[ ] Smith had no ownership or possessory rights to the Deem vehicle.

[ ] There was no relationship between Smith and Deem to lead Smith to believe that she was entitled to drive the Deem car. Smith and Deem had met for the first time only one month earlier. . . .

[ ] Smith violated the applicable curfew statute, prohibiting her from being out or operating a motor vehicle after 11:00 p.m. on a weeknight. I.C. 31–37–3–2. . . .

We conclude that these findings of fact are supported by the evidence. And these findings support the trial court's conclusion that Smith's belief that she was entitled to drive Deem's car was not reasonable. Accordingly, the trial court did not err when it concluded that Smith is excluded from liability coverage under Deem's Cincinnati Insurance policy.

Affirmed.

ROBB, and BAILEY, JJ., concur.